IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINESSOTA

| | | |
|---|---|---|
| LUANN KAY BESTE, | * | |
| | * | |
| Plaintiff, | * | 0:19-cv-02585 RWP |
| | * | |
| v. | * | |
| | * | |
| ANDREW SAUL, | * | |
| Commissioner of Social Security, | * | |
| | * | MEMORANDUM OPINION |
| Defendant. | * | AND ORDER |
| | * | |

Plaintiff, Luann Kay Beste, filed a Complaint in this Court on September 24, 2019,
seeking review of the Commissioner's decision to deny her claim for Social Security benefits
under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* This Court may review a final
decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed an application for benefits on May 3, 2015. Tr. at 199-205. Plaintiff
appeared at an administrative hearing on September 10, 2018, before Administrative Law
Judge Penny Loucas (ALJ). Tr. at 39-67. The ALJ issued a Notice of Decision – Unfavorable
on December 11, 2018. Tr. at 10-34. On July 26, 2019, the Appeals Council declined to
review the ALJ's decision. Tr. at 1-5. Thereafter, Plaintiff commenced this action. Both
parties filed Motions for Summary Judgment and memorandum in support thereof. ECF Nos.
18, 19, 21, 22.

**ALJ's DECISION**

At the outset of the decision, the ALJ noted that Plaintiff is insured for benefits until
December 31, 2021. Tr. at 15. At the first step of the sequential evaluation, 20 C.F.R. §
404.1520(a)(4), the ALJ found that Plaintiff has not engaged in substantial gainful activity
after September 28, 2016, the alleged disability onset date.

At the second step of the sequential evaluation, the ALJ found that Plaintiff has the following severe impairments: reconstructive surgery to the right foot, bilateral degenerative joint disease of the bilateral hips and knees, and degenerative joint disease of the lumbosacral spine. Tr. at 16. The ALJ found non-severe impairments: bilateral carpal tunnel syndrome, depression and anxiety.  Id.  The ALJ also noted a non-medically determinable impairment – fibromyalgia.  Tr. at 17-18.

The ALJ found that Plaintiff's impairments were not severe enough to qualify for benefits at the third step of the sequential evaluation.  Tr. at 19.  At the fourth step, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can lift and carry 20 pounds occasionally and 10 pounds frequently;  she can stand and walk a maximum of four hours a day each with standing/walking limited up to thirty-minutes at one time; she must avoid operating foot controls with the right foot; she can never climb ladders, ropes, or scaffolds; she can occasionally climb stairs and rams [sic]; she can frequently kneel, crouch, and crawl; she must avoids concentrated exposure to wetness and unprotected heights and uneven terrain.

Tr. at 22.  The ALJ found that Plaintiff is unable to perform her past relevant work.  Tr. at 25. Based on the testimony of a vocational expert, the ALJ found that there are a significant number of jobs in the national economy which Plaintiff can perform, examples of which are office helper, information clerk, and mail clerk.  Tr. at 26-27.  The ALJ found that Plaintiff is not disabled nor entitled to the benefits for which she applied. Tr. at 28.

## DISCUSSION

> We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2007) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

*Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (alterations in original).

In *Brand v. Sec'y of Dep't of Health, Educ. and Welfare*, 623 F.2d 523, 527 (8th Cir. 1980),

Chief Judge Lay wrote that *Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951), is "the

guideline for the evaluation of the standard of review." In *Universal Camera*, the Court wrote:

We conclude, therefore, that the Administrative Procedure Act and the Taft-Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.

340 U.S. at 490. In *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) the Court wrote: "On

judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial

evidence'. The Court continued:

And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means – and means only – "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

139 S. Ct. at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). In reviewing disability decisions from the Social Security Administration, this Court sits in an appellate capacity and is responsible for giving the agency decision a scrutinizing analysis. This requires the Court to determine the substantiality of the evidence by determining if the ultimate decision is supported by substantial evidence on the record as a whole. *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). In *Gavin*, the Court wrote:

> In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. It follows that the only way a reviewing court can determine if the entire record was taken into consideration is for the district court to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out.

> *Id*. (citations omitted).

In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136-37 (8th Cir. 1998) (citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir. 1975)).

The most important issue in any disability case that proceeds beyond step three of the sequential evaluation is that of residual functional capacity:

> Probably the most important issue will be the question of [residual functional capacity] . . . The RFC that must be found . . . is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.

*McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc).

For reversal Plaintiff argues: (1) The ALJ's decision is not supported by substantial evidence, as it fails to properly evaluate the evidence regarding Plaintiff's medically determinable mental impairments of anxiety and depression; (2) the ALJ's credibility

assessment is generally defective because of the above error and is specifically so because of her failure to consider Plaintiff's strong work history in her assessment.

### ISSUE I:  DID THE ALJ FAIL TO PROPERLY EVALUATE PLAINTIFF'S MEDICALLY DETERMINABLE MENTAL IMPAIRMENTS OF ANXIETY AND DEPRESSION?

Plaintiff argues that the ALJ erroneously relied on the absence of mental health treatment to conclude that anxiety and depression imposed no more than mild limitation of the ability to perform work-related activities.  Plaintiff argues that the ALJ failed to discuss the treatment records from Family Counseling Center; the ALJ failed to build a "logical bridge" between the evidence and her conclusion; and the ALJ erred by rejecting the opinion of consultative examiner Lyle Wagner.

At the outset, the Court would note that the ALJ was not unaware of the Family Counseling Center records.  Mention is made of them on page 12 of the ALJ's decision.  The ALJ noted that the evidence in the record including the counseling records "continue to support [the State Agency psychological consultants'] opinions that the claimant's mental impairments did not impose significant functional limitations, separately or in combination with any of her other impairments, including her physical impairments."  Tr. at 24-25.

In the decision, the ALJ wrote that Plaintiff's medically determinable impairments of depression and anxiety do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities such that they are non-severe.  In making that finding, the ALJ considered the "four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders in the mental disorders listing in 20 CFR, Part 404, Subpart P, Appendix 1."  Tr. at 16.  The ALJ noted that although Plaintiff had been advised to undergo counseling and impatient treatment, Plaintiff limited her treatment to psychotropic medications.

The ALJ cited several administrative exhibits – 19F, pp. 47-50, 10F, and 19F – which the

ALJ determined showed that Plaintiff's depressive and anxiety symptoms acutely increased occasionally but only produced mild limitations at the worst of times.  Tr. at 17.  The ALJ pointed to treatment records dated September 18, 2017 from Buffalo Clinic, at which time Plaintiff reported feeling worse for a few weeks.  On two occasions Plaintiff had made suicide attempts by sitting in a running car in a closed garage.  Tr. at 805.  Plaintiff's medication was increased, and Plaintiff was encouraged to find a mental health counselor.  Tr. at 809.  On November 21, 2017, Plaintiff was seen at Buffalo Clinic at which time she reported increased anxiety/depression in response to her father's death the previous week.  Tr. at 817.

The ALJ cited treatment records from Interventional Pain & Physical Medicine Clinic where Plaintiff saw Thomas C. Kowalkowski, D.O., FIPP, dated August 17, 2016 at which time it was noted that Plaintiff reported treatment by health professionals for depression, anxiety, and other emotional stressors.  Plaintiff reported severe anxiety, severe depression, mild anger, moderate confusion, and moderate stress being present in her life.  However, Plaintiff reported being able to handle the moderate stresses in her life, saying that she received just the right amount of support.  On review of systems, under the heading psychiatric, Plaintiff denied depression, suicidal thoughts, anxiety, and chemical dependency.  Tr. at 688.

The ALJ also cited Plaintiff's visit to the clinic on September 7, 2016 at which time she reported significant improvement in symptoms, including symptoms of anxiety.  Tr. at 696. The ALJ cited Interventional Pain and Physical Medicine Clinic office treatment records dated November 9, 2016. Tr. at 754-58.  The ALJ cited Buffalo Clinic records dated March 24, 2017, April 11, 2017, and July 10, 2017. Tr. at 770 ((Plaintiff complained of worsening depression for the previous month – had not contacted the free counseling center which had been recommended); Tr. at 781 (Plaintiff reported that previously prescribed Zoloft helped with depression and noted no side effects); Tr at 791 (No side effects with Buspar and Zoloft. Mild

improvement noted in anxiety and depression).

In support of evidence which detracts from the substantiality of the ALJ's finding, Plaintiff points to records from Family Counseling Center dated October 11, 2016 through August 20, 2018.  Tr. at 872-87.  The "records" consist of a series of check-the-box forms. Plaintiff was seen on October 11, 2016 for intake and diagnostic assessment.  Nothing is written on the seven lines provided for the therapist to list the presenting problems or complaints.  Plaintiff denied previous outpatient or inpatient treatment.  No substance abuse was noted.  Tr. at 879.  The only notation on the second page indicates that Plaintiff drinks four cans of soda pop per day and smokes a pack of cigarettes.  Tr. at 880.  Check marks indicate severe occupational/educational impairment, and moderate depressed mood.  Tr. at 881.  The following items were checked severe:  lack of pleasure, sleep, appetite, energy, social withdrawal, racing thoughts, procrastination, and feelings of guilt.  Anxiety was indicated to be between moderate and severe.  Tr. at 882.  There is space on the form for a multi-axial diagnostic impression, but no notations were made thereon.  It was noted that Plaintiff's therapeutic expectations were: "Happier" and "physical pain."  Tr. at 883.  Plaintiff was seen at the Center on October 18, 2016.  The counselor wrote that the session was utilized for rapport building purposes and that Plaintiff continued to be in high levels of physical pain and that she struggled with day to day activities.  The checked boxes indicate a sad mood and, under Anxiety - worry and apprehension.  All other boxes are checked "within Normal Limits."  Tr. at 887.  Plaintiff was seen by the counselor on October 26, November 2, and November 10, 2016. Tr. at 884-886.

Plaintiff also points to a Buffalo Clinic treatment note signed by Kristina Kessler, PA-C dated September 18, 2017 which states:  I am happy to hear she is finally starting counseling this Thursday, this has been a battle as her insurance will not pay for counseling.  I did again

give her a who-to-call card with other low cost or free counseling options." Tr. at 809. In 2018, Plaintiff was seen at Family Counseling Center on July 10, July 30, and August 20. Tr. at 872-78.

Plaintiff argues that the ALJ erred by rejecting the opinion of consultative examiner, Lyle Wagner, Ph.D. The ALJ gave the following reasons for the weight assigned to Dr. Wagner's opinion: 1) Plaintiff's "treatment history and longitudinal normal mood and affect secondary to her documented ameliorative response to psychotropic medication fail to establish significant nonexertional mental limitations during the current adjudicating period"; 2) "Dr. Wagner's opinion appears to be based more on the claimant's subjective allegations and one-time snapshot of the claimant's mental functioning on the day for the examination. Dr. Wagner's report is found at pages 626–31 of the record. Dr. Wagner diagnosed Major Depressive Disorder, Recurrent, Moderate and Generalized Anxiety Disorder. Tr. at 631. Dr. Wagner offered the following opinions: 1) Plaintiff appeared capable of concentrating on and remembering moderately complex instructions, based on the doctor's assumption that Plaintiff's overall level of cognitive functioning is average; 2) Plaintiff may have some difficulty in her ability to persist at a reasonable pace due to moderate depression/anxiety; 3) Plaintiff may have some difficulty tolerating co-workers, the public and supervision "by self-report" due to current level of anxiety/depression; 4) Plaintiff may have some difficulty managing stress and pressure in a typical work setting due to her current level of depression and anxiety. Dr. Wagner recommended a psychiatric consultation and regular individual psychotherapy. Tr. at 630.

Plaintiff's mental impairment was evaluated by State Agency psychological consultant Ken Lovko, Ph.D. on September 12, 2016. Dr. Lovko evaluated Dr. Wagner's report and wrote that it should be given partial weight because it was based on Plaintiff's self-report and was not

consistent with the level of care being received.  Dr. Lovko wrote:

> Careful consideration has been given to the claimant's statements regarding alleged symptoms and their effects on functioning.  Allegations of symptoms appear consistent with the [medically determinable impairment] although allegation of severity of functioning is not supported by totality of [medical evidence] in file. Claimant is on psychotropic meds prescribed by [primary care physician].   Not currently receiving psychiatric treatment or psychotherapy services.   [Activities of Daily Living] appear limited primarily by physical issues/complaints.  Claimant condition is not severely limiting.

Tr. at 76.

Even though the ALJ did not explicitly discuss in detail the "treatment records" from the Family Counseling Center, the Court finds no error for two reasons:  1) medical records in a check-the-box format have little evidentiary value,  *See. e.g., Hilliard v. Saul*, 964 F.3d 759,762  (8th Cir. 2020) (A treating physician's assessments possess little evidentiary value when they consist of nothing more than vague, conclusory statements such as checked boxes, circled answers, and brief fill-in-the-blank responses); and 2) the ALJ specifically referenced the records from the Family Counseling Center in the discussion of "other opinion evidence" indicating that she was aware of the evidence provided by the Center. Tr. at 24.

Although there is some substantial evidence in the record which detracts from the ALJ's finding, that evidence is not sufficient to require this Court to set aside the ALJ's finding.  As Justice Kagan wrote: "[T]he threshold for such evidentiary sufficiency is not high. … [substantial evidence] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *See also, Lawrence v. Saul*, No. 19-2355, slip op. at 12 (8th Cir. July 31, 2020) (if substantial evidence supports the Commissioner's decision, a reviewing court may not reverse even if the court might have decided the case differently).

Finally, even if it there was error in the finding that Plaintiff's mental impairments are not severe, that error is harmless.  "Courts frequently find that an ALJ's error at Step Two in failing to find a particular impairment severe does not require reversal where the ALJ finds other severe impairments and considers all of a claimant's impairments, severe and non-severe, in his or her subsequent analysis."  *Cornick v. Berryhill*, No. 4:17-CV-1265-SPM, 2018 WL 4383300 at *4 (E.D. Mo. Sept. 14, 2018).  In *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019), the Court wrote: "Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."  Here. the ALJ found severe impairments regarding Plaintiff's right foot, hips and knees, and lumbosacral spine.  The Court finds no error on this issue.

## ISSUE II:  CREDIBILITY ASSESSMENT

Plaintiff argues that the ALJ's credibility assessment is deficient because of a failure to consider Plaintiff's strong work history.

In her brief, Plaintiff acknowledges that under the revised regulations, credibility findings are no longer made.  Rather, findings are made to determine whether the claimant's symptoms are consistent with and supported by the record.

Social Security Ruling (SSR) 16-3p, 2016 WL 1119029 at *6 (Mar. 16, 2016) states: "Medical sources may offer diagnoses, prognoses, and opinions as well as statements and medical reports about an individual's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms."  As the Commissioner points out, Plaintiff did not offer a medical source statement addressing the question of her work history.  Likewise, the Court has found no case law requiring such a finding.  In times past when credibility findings were made, claimants with a good work record were entitled to substantial

credibility when claiming an inability to work because of disability.  *See, e.g. Nunn v. Heckler*, 732 F.2d 645, 658 (8th Cir. 1984) ("In addition, '[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.' *Rivera v. Schweiker*, 717 F.2d 719, 725 (2nd Cir. 1983).").  The Court found that the ALJ proffered reasons for disbelieving Nunn's allegations of pain which were unsupported, indeed contradicted, by the record.  "We believe that the reasons offered by the ALJ were merely a guise for his belief that the 'overall objective medical evidence' did not fully support Nunn's complaints." *Id.*  The ALJ denied benefits on the basis that Nunn could return to her past relevant work.  *Id.*  Likewise, in *Lanning v. Heckler*, 777 F.2d 1316, 1317 (8th Cir. 1985), the case was remanded because the ALJ had failed to recognize that the burden of proof had shifted after a finding that Lanning, a 55-year-old individual, was unable to perform his past relevant work.  The Court noted that the record provided no evidence of malingering – that Lanning had worked two jobs for 20 years with no claims of disability until a heart condition forced him to retire.  *Id.* at 1318.  Today, however, the regulations have been revised such that credibility is no longer an issue on which claims turn.  Claims are not granted or denied on the basis of an adjudicator's finding of credibility – "an examination of an individual's character."  Rather, the emphasis is on consistency of the testimony with the record as a whole.  SSR 16-3p, 2016 WL 1119029 at *1 (Mar. 16, 2016).

In *Swink v. Saul*, 931 F.3d 765, 770-71 (8th Cir. 2019) the Court discussed an ALJ's duty to evaluate a claimant's subjective complaints of pain with consideration given to objective medical evidence, the claimant's work history, other evidence relating to the five well known credibility factors – 1) daily activities, 2) duration, frequency and intensity of the pain, 3) precipitating and aggravating factors, 4) dosage effectiveness, side effects of medication, and 5) functional restrictions.  The Court, however, was clear that an ALJ need not explicitly discuss

each factor.  "[W]e will defer to credibility determinations that are supported by good reasons and substantial evidence.  An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony."  *Id*. (quoting *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019)).

In the case at bar, the ALJ stated that Plaintiff's residual functional capacity was arrived at with consideration of her symptoms based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p.  Tr. at 22.  The ALJ found that the evidence in the record, including the objective evidence as well as the opinion evidence, supported the finding that Plaintiff is limited such that she is unable to perform her past relevant work but is able to perform other work cited by a vocational expert who was called to testify at the administrative hearing.  The ALJ noted the post-surgical occupational rehabilitation records; Dr. Kowalkowski's observations; Plaintiff's reports of significant improvement; and the effectiveness of pain medication, steroid injections, lumbar brace, physical therapy and home exercises.  The ALJ considered and weighed the opinions of various medical sources.  Tr. at 23-25.

In the opinion of this Court, the ALJ's finding of residual functional capacity is supported by substantial evidence on the record as a whole and was arrived at by considering the factors set forth in the regulation and ruling discussed above.  Discussion of Plaintiff's work record is required neither by the Commissioner's regulations nor by case law.  The Court finds no error on this issue.

## CONCLUSION AND DECISION

The Court has considered the evidence that supports, as well as the evidence that detracts from, the decision made by the ALJ.  After applying the balancing test noted in *Gavin*, 811 F.2d at 1199, and cases cited therein, this Court holds the final decision of the Commissioner is supported by substantial evidence on the record as a whole and not affected by any error of law that requires

reversal or remand.  Plaintiff's Motion for Summary Judgment (ECF No. 18) is DENIED and

Defendant's Motion for Summary Judgment (ECF No. 21) is GRANTED.  The final decision of the

Commissioner is affirmed, and the case is dismissed.

        IT IS SO ORDERED.
        Dated this ___4th___ day of August 2020.

ROBERT W. PRATT, Judge
U.S. DISTRICT COURT